John A. Garbarino, J.
Little League Baseball was incorporated by act of Congress July 16, 1964 (Public Law 88-378 ; 78 U. S. Stat. 325) as the successor of Little League Baseball, Inc., chartered in the State of New York. The objects and purposes of corporation are stated in the Act to be as follows:
*627 “ Sec. 3. The objects and purposes of the corporation shall be—
“ (1) To promote, develop, supervise, and voluntarily assist in all lawful ways the interest of boys who will participate in Little League baseball.
“ (2) To help and voluntarily assist boys in developing qualities of citizenship, sportsmanship, and manhood.
“ (3) Using the disciplines of the native American game of baseball, to teach spirit and competitive will to win, physical fitness through individual sacrifice, the values of teamplay and wholesome well-being through healthful and social association with other youngsters under proper leadership.”
The handbook of official rules states the administrative relationship between the national and local organizations to be as follows:
“ Administration. The local league operates under a charter granted annually by Little League Baseball, Inc. The league is autonomous in the sense of freedom to elect its own officers, finance its program and carry on various other related functions, but it must adhere scrupulously to all rules and regulations established by Little League Baseball, Inc. and the International Congress of league representatives.”
The national policy on the role of the parent is stated in the handbook as follows:
11 Parents should accept the fact that they must shoulder responsibility and take initiative to make the local program successful. Little League is not a club in which membership implies baby-sitting benefits and entertainment privileges.
“ Practically speaking, Little League is an adult, volunteer work project constructed, supervised and assisted by parents who desire to make its benefits extend to their children.
“ Each parent should join in the total effort. There is a place and a job to do for all. The burden of operating the league should not fall on a few. The parent who shirks this responsibility cannot, in turn, expect others to assume the burden.”
Staten Island Little League, Inc., is a not-for-profit corporation, formerly known as a membership corporation, organized under the laws of the State of New York, and conducts the Staten Island Little League as a chartered affiliate of the parent body.
The constitution and by-laws of the local league provide for six classes of membership, five for adults and one class for player members, as follows: “a. Player Members: Any boy meeting the requirements as to age and residence, as set forth in the rules of Little League Baseball, Inc. and Staten Island *628 Little League, Inc. shall be eligible to compete for participation in the Staten Island Little League, Inc. without the payment of any dues or fees, but shall have no rights, duties or obligations in the management or property of the ‘ League ’. ’ ’
Provision for suspension or termination of membership is provided as follows:
“ Section 4. Suspension or Termination — Membership may be terminated by resignation or action of the Board of Directors.
“a. The Board of Directors, by a two-thirds (%) vote of those present at any duly constituted meeting, shall have the authority to discipline or to suspend or terminate the membership of any member of any class when the conduct of such person is considered detrimental to the best interest of the 1 League ’ and/or Little League Baseball.
“ The member involved shall be notified of such meeting, informed of the general nature of the charges and given an opportunity to appear at the meeting to answer such charge. Each member of the Board of Directors shall be notified of any such pending charge.
“b. The Board of Directors shall, in the case of a player member give notice to the manager of the team of which the boy is a member. Said manager shall appear in the capacity of an advisor, with the boy, before a duly appointed committee of the Board of Directors which shall have full power to suspend or revoke such boy’s right to future participation.”
Section 5 of article 6 of the by-laws provides that the board of directors shall have the power to adopt such rules and regulations for its management as shall be deemed proper by the board.
The board adopted regulations for the 1971 season, which provided, among other things, that:

“PARENTS

‘ ‘ 2. A father must make the work party calls of the League. Failure to attend or notify the League of reasons why he cannot attend will lead to the suspension of the boy.”
The proceeding before the court involves Arnold Paglia, an infant, and player member of a team in the local league who was allegedly suspended because of his father’s failure to attend designated work parties. In form, the proceeding is brought pursuant to article 78 of the CPLR. In the view the court takes of the facts herein, there has not been such a final determination as required by CPLR 7801 for such review, but the court under our liberal rules of pleading construes the pleadings as an action for a declaratory judgment (cf. CPLR 103 (subd. [c]); CPLR *629 3001). The board of directors of the Staten Island Little League did not suspend the infant player member at any time prior to the commencement of this proceeding.
The court held a hearing on May 12,1971 and the facts herein have been adduced from the testimony of Dr. Michael Paglia, the father of the infant petitioner, and William Caines, president of Staten Island Little League. Arnold’s alleged suspension has resulted from the failure of his father, Michael, to attend designated work party sessions. "Upon a repeated failure to attend such a session, Dr. Michael Paglia received a form postal card postmarked 5/3/71, addressed as follows:
“ Mr. Paglia 47 Eddy St. S. I. N. Y.” and reading as follows:
“ Since you have ignored our previous requests for your attendance at a work party, your son * * * is suspended from further play in the staten island little league, inc. until such time as you arrange to appear before the Board of Directors to straighten this matter out.
President ”
Though counsel for petitioner argues that the language of the card indicates that the card itself suspended the boy, the testimony adduced at the court hearing suggests otherwise. Dr. Paglia testified in substance that in his telephone conversation with William Caines, league president, on May 5, following receipt of the card, his son, Arnold, would be suspended unless the father made arrangements for a work session and in the early part of this conversation, the doctor consented to a Sunday, May 9 work session. Later in the same telephone conversation, the entire tone changed and resulted in Dr. Paglia bringing the instant proceeding in lieu of either participating in the said work session or appearing before the Staten Island Little League’s board of directors.
Mr. Caine testified at the same court hearing that he told Dr. Paglia on May 5 the boy was to be suspended on Sunday, May 9, upon the father’s failure to report for that day’s work meeting or to arrange for a suitable subsequent date. The instant proceeding was brought on by order to show cause signed on May 7, 1971 and served on respondent May 8, 1971.
Taking into consideration the totality of circumstances, the voluntary nature of the Little League organization, its objectives, its lack of paid staff or organization, its now well-established modus operandi, the language of the card, and the testimony of both Dr. Paglia and Mr. Caine, the court rejects the petitioner’s contention that the card suspended the boy and holds that it merely constituted notice to the parent that suspen *630 sion of the boy would ensue in the event that the matter of participation in the work party was not suitably arranged for, either with the league president or its board of directors.
It is undisputed that there has been no misconduct on the part of the infant, Arnold. It is equally clear that we are not now concerned with the power of the league to penalize the father, Dr. Paglia, but the right of the league to penalize the son for the failure of the father to participate in a designated work party.
A local membership corporation is bound by the rules and decisions of the parent organization and the power to suspend or expel members is ‘ ‘ for cause ’ ’ when such conduct is destructive of the purpose of the organization (cf. 37 N. Y. Jur., Membership Corporations, §§ 15, 34). The by-laws vested the power to suspend or expel in the board of directors (37 N. Y. Jur., Membership Corporations, § 36). That power was not exercised here prior to the commencement of this proceeding, and this court will not undertake to act for the board one way or another.
The testimony and exhibits indicate that Little League envisions co-operation by the parents in work chores necessary to keep the league running properly; that there are no paid employees, and that, without the voluntary work done by the parents of the Little League members, the survival of the Little League, as it is presently constituted, would be imperiled. There was no evidence of prejudicial or capricious or arbitrary elements in the league’s treatment of young Paglia. Dr. Paglia refused to appear on the assigned work days or make other arrangements for an alternate date. There are only three mandated work sessions for each parent spanning the entire year, and it does not seem to be an unreasonable or arbitrary rule to have the parent, Dr. Paglia, accommodate his schedule to league requirements.
The court finds as a matter of law that there has been no violation of the petitioner infant’s rights either under the Fourteenth Amendment of the Constitution or the Civil Rights Act of 1964 (U. S. Code, tit. 42, § 1971 et seq.). There is not that degree of State involvement in the affairs of Little League that would require the court to invoke the due process clause of the Fourteenth Amendment of the Constitution (cf. Matter of Fuller v. Urstadt, 28 N Y 2d 315). Nor does the fact of incorporation by Congress require the application of principles different from those applied to membership corporations generally (cf. 8 Fletcher, Cyclopedia Corporations, § 4043).
The court further finds that there has been no violation of the petitioner’s rights under the Membership Corporations Law of *631 this State, and that there has been no violation of the constitution and by-laws of the respondent, Staten Island Little League, Inc., and that the respondent’s adoption of the disputed regulation was in accord with its constitution and the national policy of the parent body. The court further finds that there was no final determination of the board of directors prior to the commencement of this proceeding with respect to suspension or expulsion of Arnold Paglia that could be reviewed by this court, and that authority to determine the status of Arnold Paglia as a player member is vested in the board of directors of the league.
The petition is denied.